IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENELINK BIOSCIENCES, INC., <br>     Plaintiff, <br>       v. <br><br> GARY D. COLBY, Ph.D, ESQ., <br> and DUANE MORRIS LLP, <br>     Defendants. | CIVIL NO. 09-5573(NLH)(AMD) <br><br> **OPINION** |

**APPEARANCES:**

ALLEN L. HARRIS
BUDD LARNER
150 JOHN F. KENNEDY PARKWAY
SHORT HILLS, NJ 07078
    On behalf of plaintiff

JOHN T. WOLAK
VINCENT E. MCGEARY
JOSHUA R. ELIAS
GIBBONS, PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310
    On behalf of defendants Gary D. Colby and Duane Morris LLP

**HILLMAN**, District Judge

    This case concerns plaintiff's state law-based legal malpractice, negligence and breach of contract claims against defendants for their alleged failure to properly prosecute plaintiff's patent applications in Japan and the United States. Defendants Gary D. Colby and Duane Morris LLP removed plaintiff's case to this Court pursuant to 28 U.S.C. §§ 1331, 1338 and 1441, contending that plaintiff's claims arise under the federal patent laws.  Presently before the Court is plaintiff's motion for remand. Defendants have opposed plaintiff's motion.  For the reasons expressed below, plaintiff's motion will be granted.

## BACKGROUND

On September 29, 2009, plaintiff, Genelink Biosciences, Inc.[1], filed a complaint in New Jersey state court alleging that defendant Gary D. Colby, Ph.D, Esquire, and the two law firms he was affiliated with--Duane Morris LLP and Akin, Gump, Strauss, Hauer & Feld LLP[2]--negligently handled two of its patent applications, one in Japan and one in the United States. Plaintiff claims that it lost valuable intellectual property rights because defendants allowed its Japanese OS Patent Application[3] to irrevocably and immediately lapse and caused its U.S. Patent Application[4] to be deemed abandoned.

In its complaint, plaintiff asserts three claims based on New Jersey state law: (1) legal malpractice/negligence; (2) negligent

---

[1] Genelink Biosciences, Inc. is "a genetic biosciences company that creates state-of-the-art genetic testing technologies as the basis for personalized health, beauty, wellness and pharmaceutical applications." (Compl. ¶ 7.)

[2] Akin, Gump, Strauss, Hauer & Feld LLP was a named defendant in this action. It did not consent to the removal, and plaintiff argues that removal was improper because Akin Gump did not consent. Akin Gump has since been dismissed from the case (per a consent order between the parties) rendering this issue moot.

[3] Plaintiff's patent application in Japan was titled "Kits and Methods for Assessing Oxidative Stress," and concerned the invention of a proprietary DNA test that can be used to genetically predict an individual's risk for a variety of age-associated health conditions.

[4] Plaintiff's U.S. Patent Application was titled "Kits for Assessing Cardiovascular Health," and concerned the invention relating to a method of assessing cardiovascular health.

misrepresentation; and (3) breach of contract.  Defendants Colby and Duane Morris removed plaintiff's case to this Court on the basis that in order to resolve plaintiff's state law claims, federal patent law must be considered.  Because federal law, particularly patent law which has its exclusive province in the federal courts, arises on the face of plaintiff's complaint, defendants claim that jurisdiction here is proper under federal question jurisdiction.  Plaintiff counters that federal law is not implicated by its claims, and therefore this Court lacks jurisdiction to hear its case.[5]

### DISCUSSION

Removal of a case from state to federal court is governed by 28 U.S.C. § 1441.  Section 1441 is to be strictly construed against removal, so that the Congressional intent to restrict federal jurisdiction is honored.  Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).  This policy "'has always been rigorously enforced by the courts.'"  Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).  Parties may not confer subject matter jurisdiction by consent, Samuel-Bassett, 357 F.3d at 396, and "[i]f at any time before final judgment it appears that the district court lacks subject matter

---

[5] No party suggests that jurisdiction may be based on diversity of citizenship pursuant to 28 U.S.C. § 1332 or any other alternative basis for federal jurisdiction.

jurisdiction, the case shall be remanded," 28 U.S.C. § 1447(c).

Defendants removed plaintiff's state law complaint to this Court based on the well-pleaded complaint rule--i.e., the complaint raises a substantial federal question. A federal question case is one "'arising under the Constitution, laws, or treaties of the United States.'" Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (quoting 28 U.S.C. § 1331). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

In Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983), the Supreme Court "referred to two situations where federal jurisdiction could be available even though plaintiff based its claim in state court on state law: (1) when it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims or (2) when it appears that plaintiff's claim is 'really' one of federal law." Goepel v. National Postal Mail Handlers Union, a Div. of LIUNA, 36 F.3d 306, 310 (3d Cir. 1994) (quoting Franchise Tax Bd., 463 U.S. at 13) (other citations omitted). This doctrine "captures

4

the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005).

A federal issue is not "a password opening federal courts to any state action embracing a point of federal law," however. Id. at 314. The federal issue will ultimately qualify for a federal forum "only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313-14. Thus, the question to be asked is "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id.; see also Christianson v. Colt, 486 U.S. 800, 809 (1988) (explaining that jurisdiction pursuant to § 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law in that patent law is a necessary element of one of the well-pleaded claims").

5

Defendants in this case urge the Court to answer "yes" to that question.  Defendants argue that plaintiff's legal malpractice claims involve, like all such claims, the resolution of a case-within-a-case--that is, the "most common way to prove the harm inflicted by malpractice . . . is a suit-within-a-suit," where a plaintiff's burden is to prove by a preponderance of the evidence that but for the malpractice or other misconduct, he, *inter alia*, would have recovered a judgment in the underlying action.  Garcia v. Kozlov, Seaton, Romanini, & Brooks, P.C., 845 A.2d 602, 611-12 (N.J. 2004) (citations omitted).  Defendants here argue that in order to be successful on its malpractice claims, plaintiff must prove that (1) a valid U.S. patent would have issued[6], and (2) the patent would have been infringed in the United States causing plaintiff to suffer damages.  Because patent validity and patent infringement are issues of federal law that have exclusive jurisdiction in the federal courts, defendants contend, plaintiff's case--at least the claim relating to the U.S. patent--raises a substantial federal issue which must be heard in this Court as Congress intended.

Plaintiff vigorously disagrees with defendants' view of its case.  Plaintiff does not dispute the elements that need to be

---

[6]Defendants do not suggest that plaintiff's claims concerning the Japanese patent raise any issues of United States patent law.

proven for a legal malpractice claim in New Jersey[7], that its claims involve issues concerning a U.S. patent application, or that patent law is an area of law Congress has indicated should be handled by federal courts. Plaintiff, however, disputes that its claims regarding defendants' failure to comply with procedural deadlines for its patent application and their overall negligence in their duties of representation require the analysis of federal law such that they raise a substantial federal issue. Plaintiff further disputes that its legal malpractice claims require the demonstration of a successful infringement action. Plaintiff argues that the only issue to be resolved is whether defendants' malpractice caused its patent application to go abandoned, and no analysis of patent law is needed to solve that issue.

The one thing the parties agree upon is that the United States Court of Appeal for the Third Circuit has not addressed the issue nor does it appear to this Court that it ever will under the current structure of the federal judiciary and the rules of appellate jurisdiction.[8] However, the Federal Circuit has issued

---

[7] In order to establish that an attorney was negligent in his representation of his client, a plaintiff must demonstrate: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that the breach was the proximate cause of any damages sustained; and (4) that actual damages were incurred. <u>Sommers v. McKinney</u>, 670 A.2d 99, 103 (N.J. Super. Ct. App. Div. 1996).

[8] While it is not ordinarily the task of this Court to opine on issues of appellate jurisdiction, we can not envision a

two relatively recent decisions discussing whether legal malpractice claims concerning patents must be heard in federal court. In those cases, the Federal Circuit found "arising under" jurisdiction over state-law legal malpractice claims stemming from patent prosecution and patent litigation. See Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262 (Fed. Cir. 2007); Immunocept, LLC v. Fulbright &

---

procedural scenario in which the precise issue now before this Court would be heard by the Third Circuit or indeed any circuit court other than the Federal Circuit. If a district court grants a motion to remand finding a removal under § 1338 to be improvident, that decision is not reviewable at the circuit level. See Kircher v. Putnam Funds Trust, 547 U.S. 633, 642 (2006). If, on the other hand, the district court denies the motion and therefore asserts or affirms subject matter jurisdiction it would appear that such a determination is only reviewable by the Federal Circuit since that court is the exclusive appellate court for patent cases arising under 28 U.S.C. § 1338. See 28 U.S.C. § 1295(a)(1) (vesting in the Federal Circuit exclusive jurisdiction over "an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on 28 U.S.C. § 1338"). Stated differently, it is the district court's determination of § 1338 jurisdiction through the denial of remand that determines the court of appellate jurisdiction. It is not surprising then, and indeed predictable, that the only cases cited to us, and which we have found independently, supporting remand are district court cases, and the only court decisions affirming a decision denying a motion to remand are from the Federal Circuit. This supports the argument that decisions of the Federal Circuit on this issue should be considered by this Court to be precedential since it is the only intermediate appellate court capable of both affirming and reversing denials of remand motions contesting removals made under § 1338. We proceed, therefore, under the assumption that those decisions have precedential value. However, as we explain below, whether those decisions are binding precedent, merely persuasive, or somewhere in between, they are also factually different, and it is on that basis and that basis alone that we decline to follow them.

Jaworski, LLP, 504 F.3d 1281 (Fed. Cir. 2007). Defendants argue that these cases concretely establish and mandate the same result for plaintiff's case. Plaintiff counters that these cases are not binding on this Court, and are otherwise not dispositive.

Recently, two district courts in other jurisdictions--Eastern District of Michigan and Northern District of Texas--have addressed the identical arguments to those advanced here. In the Michigan case, a manufacturer of lacrosse and hockey equipment retained the legal services of the defendant attorneys and their law firms to prosecute a patent for a lacrosse stick head. Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C., 632 F. Supp. 2d 694 (E.D. Mich. 2009). The manufacturer claimed that the defendants committed legal malpractice by failing to timely file maintenance fees resulting in the lapse of its patent, failed to fully communicate with it, and failed to effectuate a timely reinstatement of the lapsed patent. Warrior Sports, 632 F. Supp. 2d at 699. Pursuant to the court's order to show cause why the case should not be dismissed without prejudice for lack of subject matter jurisdiction, the parties argued that the manufacturer's state law legal malpractice claims arose under federal patent law and the court had subject matter jurisdiction pursuant to § 1338. Id. at 695.

Similarly, in the Texas case, the owner of the rights to a special roofing system filed in federal court a state law legal

malpractice action against an attorney and his law firm for their failure to properly prosecute its patent application, resulting in the lapse of the deadline by which the application could be revived and the ultimate loss of federal patent protection. <u>Roof Technical Services, Inc. v. Hill</u>, 679 F. Supp. 2d 749 (N.D. Tex. 2010). The defendants moved to dismiss the action for lack of subject matter jurisdiction, arguing that the plaintiff's basis for jurisdiction--that its state law claims arise under federal law because of the underlying patent issues--was baseless. <u>RTS</u>, 679 F. Supp. 2d at 750.

In both cases, the courts distinguished the Federal Circuit cases advocated by defendants here, and determined that the plaintiffs' state law malpractice cases did not implicate federal law so that jurisdiction in federal court was proper pursuant to 28 U.S.C. § 1338. With regard to the Federal Circuit cases, the courts first summarized them:

> In <u>Air Measurement</u>, the plaintiffs sued their attorneys, alleging that the attorneys' failure to adequately prosecute their patents forced them to settle several patent infringement lawsuits for below fair market value. <u>See</u> 504 F.3d at 1266. Applying Texas law, the court found that to determine if the attorneys' negligence proximately caused the plaintiffs' alleged damages, a court would have to determine whether the plaintiffs would have prevailed in the underlying infringement lawsuits. <u>See id.</u> at 1268-69. Because such a determination would require an analysis of whether the plaintiffs' patents had been infringed, the court found that patent infringement was a necessary element of the plaintiffs' well-pleaded malpractice claim, and, therefore, that the action raised a substantial patent

10

> law issue. See id. at 1269. Similarly, in Immunocept, the plaintiffs alleged that their attorneys' drafting error reduced the scope of their patent, thereby allowing their competitors to copy the unprotected technology. See 504 F.3d at 1283-85. The Federal Circuit found that to determine proximate cause, a court would have to analyze the scope of the plaintiffs' patent and that patent scope was a substantial patent law issue. See id. at 1285.

RTS, 679 F. Supp. 2d at 752; see also Warrior Sports, 632 F. Supp. 2d at 697-99 (similarly summarizing Air Measurement and Immunocept).

The courts then distinguished the Federal Circuit cases from the cases before them. In Warrior Sports, the court found that unlike in Air Measurement and Immunocept, the plaintiff's legal malpractice claim (1) did "not necessarily require a court to engage in claim construction, evaluate the viability of underlying patent litigation, or determine if others are infringing the patent in question," (2) "seem[ed] readily addressed without reference to actual substantive and disputed questions of patent law," and (3) "the issues implicated in the underlying disputes . . . d[id] not appear to be matters of importance in the development of patent law." Warrior Sports, 632 F. Supp. 2d at 699; see also Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C., 666 F. Supp. 2d 749, 751 (E.D. Mich. 2009) ("Warrior Sports II") (denying motion for reconsideration and re-emphasizing its prior decision).

In RTS, the court found that "nothing indicates a serious

11

federal interest in adjudicating" plaintiff's legal malpractice claim in federal court: "The federal issues identified by the plaintiffs are not important issues of law. The court will not, for example, have to determine the meaning of federal patent law. Moreover, because the potential federal issues require only application of federal law to the specific facts of this case, the resolution of those issues will not be controlling in numerous other cases. As the Court recognized in Grable, it has rejected the notion that 'mere need to apply federal law in a state-law claim will suffice to open the "arising under" door.'" RTS, 679 F. Supp. 2d at 753. The RTS court further explained that there was no federal interest at stake because even though there is a federal interest in the uniform application of patent laws, that interest was not implicated where no patent rights were actually at stake-- no patent had issued for the invention and none would issue. Id. Thus, even if the court had to decide patent law issues, "those decisions will not create or destroy any patent rights such that uniformity in the way patents are issued or enforced will be threatened." Id.

Assuming, without deciding,[9] that Air Measurement and

---

[9] The courts in Warrior Sports and RTS took their analyses a step further to discuss the policy considerations of their holdings. The RTS court commented that if "every legal malpractice action in which the attorney commits the alleged malpractice while handling a federal matter" were to be the basis for federal court jurisdiction, "extending federal jurisdiction to all such actions would . . . sweep an entire category of

Immunocept bind this Court, we nonetheless find that those cases are distinguishable from the case here for the same reasons expressed by the RTS and Warrior Sports courts.

With regard to the U.S. patent, plaintiff claims that defendants failed to file a response to the USPTO Examiner's Office

---

cases, traditionally the domain of state courts, into federal court," which would be contrary to Grable. RTS, 679 F. Supp. 2d at 754. Similarly, but with more biting criticism of the Federal Circuit's approach, the Warrior Sports court reflected that "the Federal Circuit appears to impose . . . an all-embracing test, effectively aggregating ever greater swaths of state-law claims into its jurisdictional sweep." Warrior Sports II, 666 F. Supp. 2d at 751. It further commented that "using the case-within-a-case framework as leverage to extend federal jurisdiction to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim would constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant." Id. at 754 (internal quotations omitted). The Warrior Sports court also noted: "Although the Court of Appeals for the Federal Circuit has exclusive jurisdiction over patent appeals, 28 U.S.C. § 1295(a)(1), it is unclear whether its decisions with respect to the scope of federal jurisdiction in patent-related matters bind federal courts. Indeed, the Federal Circuit's appellate jurisdiction is limited to cases in which the district court's decision was 'based, in whole or in part, on section 1338,' 28 U.S.C. § 1295(a)(1). Logically, the Federal Circuit's appellate jurisdiction is not necessarily implicated where a district court finds that it has no section 1338 jurisdiction altogether." Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C., 632 F. Supp. 2d 694, 698 (E.D. Mich. 2009) (citing Holmes Group Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 829-30 (2002)). This Court is less concerned about "usurpation" and more concerned about the potential confusion and loss of uniformity in patent law if the case-within-a-case rule were not followed where appropriate. All federal courts should be as vigilant in exercising the full measure of their subject matter jurisdiction as they are in being sure never to exceed it. However, as the Federal Circuit decisions are readily distinguishable on the facts and the potential harm to patent law uniformity from this case non-existent, we need not enter this fray.

Action, dated November 17, 2004, by the December 17, 2004 deadline, thus causing plaintiff's application to become abandoned on that date.  Plaintiff also claims that defendants informed plaintiff of the November 17, 2004 Office Action on January 6, 2005, but did not inform it of the then-passed December 17, 2004 deadline.  According to plaintiff, defendants instead informed plaintiff that it had until February 17, 2005 to respond to the Office Action to avoid extension fees, but that the drop-dead date was May 17, 2005.  May 17, 2005 passed without any action by defendants.  On December 17, 2005, the deadline for filing a petition to revive the patent application for unintentional abandonment expired.  In summary, plaintiff alleges that defendants "failed to timely report the Office Action within the initial one-month deadline, allowed the six-month deadline to pass without further communication, failed to file a petition to revive within the one year deadline despite receiving written instructions to proceed, raised the possibility of petitioning to revive and prepared a draft petition and response nearly eight months after the deadline had passed, received instructions from [plaintiff] to pursue revival, and still failed to file the petition seven months later."  (Compl. ¶ 69.)

Just like in RTS and Warrior Sports, even though the underlying issue involves a patent application, plaintiff's legal malpractice claim does not turn on substantial questions of federal law.  Plaintiff's claim is simply that defendants repeatedly missed

14

deadlines that caused plaintiff's application to be deemed abandoned.  Unlike in the Federal Circuit cases, the resolution of plaintiff's claim does not seek determination of infringement or claim construction.  Indeed, plaintiff could never advance an infringement claim or prosecute or defend any other action regarding the patent because it never received a patent.[10]  Additionally, whether and why defendants missed deadlines in the application process does not raise important issues of federal patent law or require the interpretation of patent law.  The

---

[10] Defendants' argument that in the case-within-a-case analysis plaintiff must prove patent validity and then also infringement requires too much.  A patent, regardless if anyone infringes upon it, has value, and being denied a patent which would have otherwise issued may alone be a cause of action. See, e.g., Richard A. Neifeld, A MACRO-ECONOMIC MODEL PROVIDING PATENT VALUATION AND PATENT BASED COMPANY FINANCIAL INDICATORS, 83 J. Pat. & Trademark Off. Soc'y 211, 214-15 (2001) ("Valuing patents is important for many purposes including determining business values, capital allocations, taxes, licensing rates, and patent infringement damages.  There is a growing interest in valuing patents because our economy is shifting from a tangible assets based economy to an intangible assets based economy.  The business world has recognized that the intangible assets of many companies exceed the value of their tangible assets, and that patents are part of these intangible assets.").  The Court, however, makes no finding on how much value plaintiff's patent, if it were to be determined patentable, has, and the amount of damages plaintiff may ultimately recover if it proves its legal malpractice claim. See, e.g., Lauren Johnston Stiroh and Richard T. Rapp, MODERN METHODS FOR THE VALUATION OF INTELLECTUAL PROPERTY, 532 PLI/Pat 817, 821 (1998) ("We suppose that a patent must be valuable, if for no other reason than that inventors devote time, effort and expense to obtaining patent protection.  Nevertheless economists who study such things are remarkably consistent in their opinions that the majority of patents are not worth much and that only a relatively small number of patents are very valuable.").

standard of care an attorney must provide his client by not missing important deadlines is the same regardless of the subject matter, and not special to the patent law field.  Moreover, because no patent was issued, no patent rights are at stake, and there are therefore no fears that substantive patent law would altered by inconsistency.

Federal jurisdiction cannot lie in this case for two other reasons.  First, like in the Michigan and Texas cases, the patent law sub-inquiry is specific to the facts of this case.  Although it is true that in order to prevail on its legal malpractice claim plaintiff must demonstrate that it would have been issued a valid patent but for defendants' actions, and that analysis requires the determination of the invention's patentability,[11] the inquiry will essentially be the contemplation

---

[11] See, e.g., 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."); Id. § 102 ("A person shall be entitled to a patent unless - (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, . . . ."); Id. § 103 ("A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

of a hypothetical situation, with no precedential effect.  A court's determination of the patentability of plaintiff's invention, "Kits and Methods for Assessing Cardiovascular Health," will not serve to reverse any decision of the USPTO, cause the invention to be patented, or strip the invention of its patent.[12] Compare Funk Bros. Seed Co. v. Kalo Inoculant Co., 333 U.S. 127 (1948) (discussing whether certain bacteria can be patented, and reversing award of patent because bacteria's qualities are the work of nature), with Diamond v. Chakrabarty, 447 U.S. 303 (1980) (discussing whether a human-made micro-organism is patentable subject matter, and affirming the grant of a patent for inventor's micro-organism).  The establishment of the invention's patentability only serves to prove the elements of proximate causation and damages to support plaintiff's legal malpractice claim, and not to prove its actual patentability.  Cf. Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1413 (Fed. Cir. 2009)

---

Patentability shall not be negatived by the manner in which the invention was made. . . .").

[12]Correspondingly, a defense to plaintiff's legal malpractice claim that plaintiff would not have been able to obtain a patent regardless of defendants' errors is not sufficient to establish subject matter jurisdiction pursuant to § 1338.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) (holding that a case does not arise under the patent laws for purposes of §§ 1338(a) and 1295(a)(1) because it involves a federal patent law defense); see also Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 827 (2002) (holding that a counterclaim invoking federal patent law is not sufficient to establish "arising under" jurisdiction pursuant to § 1338).

(finding federal jurisdiction in plaintiff's legal malpractice case because plaintiff was "required to show that, had [defendant attorneys] not omitted a portion of the source code from its application, the resulting U.S. patent would not have been held invalid").

The final reason why jurisdiction cannot be predicated on § 1338 is the removal statute's strict presumption against removal. The removal statutes are "to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). The Court recognizes that unlike other federal claims which can be heard in either state or federal court, see Tafflin v. Levitt, 493 U.S. 455, 458-59 (1990) ("[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."), § 1338 provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents," 28 U.S.C. § 1338; see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988) (holding that § 1338 jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded complaints").

This case, however, relates to legal malpractice for missed deadlines, and not to patents, as there is no actual patent at issue.  Thus, there is no basis for exclusive jurisdiction in the federal courts in this case.[13]

---

[13] The Court also disagrees with defendants' assessment that remand of this case to New Jersey state court "leads to inherent problems" because it would require a state court judge to "resolve complex issues under the federal patent statutes." (Def. Opp. at 26.)  "While state courts are precluded from exercising jurisdiction over cases arising under the patent laws, they are not completely excluded from addressing patent questions.  It is well settled that state courts may adjudicate patent law issues provided that they collaterally arise under a cause of action over which the state court has subject matter jurisdiction. As summarized by the Supreme Court: '[W]here a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, or asks the aid of the Court in declaring a forfeiture of the license or in restoring an unclouded title to the patent, he does not give the federal district court jurisdiction of the cause as one arising under the patent laws.'"   Dutch D. Chang, THE PRECLUSIVE EFFECT OF STATE COURT ADJUDICATION OF PATENT ISSUES AND THE FEDERAL COURTS' CHOICE OF PRECLUSION LAWS, 69 Fordham L. Rev. 707, 727 (2000) (citing Hathorn v. Lovorn, 457 U.S. 255, 266 n.18 (1982))('We frequently permit state courts to decide 'collaterally' issues that would be reserved for the federal courts if the cause of action arose directly under federal law. For example, the state courts may decide a variety of questions involving the federal patent laws.'); Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 259 (1897) (holding that determination of patent issues by a state court, which are implicated in a cognizable state law cause of action, 'is not beyond the competency of the state tribunals'); Jacobs Wind Elec. Co. v. Fla. Dep't of Transp., 919 F.2d 726, 728 (Fed. Cir. 1990) (ruling that petitioner's assertion that a Florida state 'court cannot pass on the validity of a patent' was wrong); Vanderveer v. Erie Malleable Iron Co., 238 F.2d 510, 512 (3d Cir. 1956) (stating that the state court is 'one of competent jurisdiction with power to determine in a case within its jurisdiction questions arising under the patent laws'), cert. denied, 353 U.S. 937 (1957); Ted D. Lee & Ann Livingston, The Road Less Traveled: State Court Resolution of Patent, Trademark, or Copyright Disputes, 19 St.

**CONCLUSION**

Eastern District of Michigan Chief Judge Gerald Rosen's observation in Warrior Sports sums it up succinctly: "Using [the] case-within-a-case analytical framework to sweep an entire class of state-law claims into federal law's preemptive reach would unavoidably result in a case of the tail wagging the dog." Warrior Sports II, 666 F. Supp. 2d at 751. Plaintiff's legal malpractice claim regarding defendants' alleged failure to comply with procedural deadlines in the prosecution of plaintiff's U.S. patent application belongs in state court where the case was originally filed. Accordingly, plaintiff's motion for remand will be granted. An appropriate Order will be entered.


Date: July 1, 2010                                s/ Noel L. Hillman
                                                  NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

---

Mary's L.J. 703 (1988) (for a review of various state law claims that may be asserted to exploit rights enabled by ownership of a patent)).